## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

*United States of America v. Lonnie J. White*
Case No. 3:07-cr-00136-TMB-SAO

By: THE HONORABLE TIMOTHY M. BURGESS

PROCEEDINGS: ORDER FROM CHAMBERS

The matter comes before the Court on the Final Report and Recommendation ("Final R&R") of United States Magistrate Judge Oravec[1] recommending denial of Defendant Lonnie J. White's successive Motion under 28 U.S.C. § 2255 (the "Motion").[2] White filed objections to the R&R.[3] For the reasons discussed below, the Court **ACCEPTS and ADOPTS** the R&R at Docket 340. Consequently, the Motion at Docket 262 is **DENIED.**

### A. Background

1. White's Conviction

A grand jury indicted White on six counts: Possession of Controlled Substances with Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) (Count 1), and Distribution of Controlled Substances, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)–(C) (Counts 2–6).[4] The charges were based on evidence, including audio and video recordings, showing that "beginning in May 2006 and continuing until August 2007, the FBI Safe Streets Task force . . . bought crack cocaine from [White] on five separate occasions."[5] On December 29, 2008, the jury convicted White of Counts 1–3 but was unable to reach a verdict on Counts 4–6.[6] At trial, the Government offered as an expert witness Forensic Scientist Stephen Palmer, a toxicologist from the Alaska Scientific Crime Detection Laboratory ("Alaska Crime Lab").[7] On April 17, 2009, the Court sentenced White to a 240-month term of imprisonment.[8]

---

[1] Dkt. 340 (Final R&R).
[2] Dkts. 262 (Motion); 263 (Memo. in Support of Motion); 277 (Amended Motion); 336 (Supplemental Briefing).
[3] Dkt. 341 (Objections).
[4] Dkts. 2 (Indictment); 46 (First Superseding Indictment). A more comprehensive factual and procedural background is set forth in the Court's R&Rs at Dockets 306 and 340. *See* Dkts. 306 (R&R Denying Motion to Dismiss); 340.
[5] Dkt. 306 at 4 (internal quotation marks omitted) (quoting Dkt. 279 at 3 (Motion to Dismiss).
[6] Dkts. 128 (Minute Entry); 132 (Jury Verdict); 165 (Judgment). Counts 4–6 were ultimately dismissed on the Government's motion.
[7] Dkts. 183 (Day 3 Trial Tr.); 184 (Day 4 Trial Tr.); 185 (Day 5 Trial Tr.).
[8] Dkt. 165 (Judgment). White's sentence was reduced to 151 months pursuant to Section 404(b) of the First Step Act on May 6, 2019. Dkt. 301 (Order re Reduction).

On direct appeal, White argued that there was insufficient evidence to support his conviction.[9] He argued that the chain of custody had been tampered with as evinced by the variation in weights of the drugs from the time they were initially seized and weighed until the drugs were weighed in the lab by Mr. Palmer.[10] The Ninth Circuit Court of Appeals rejected these arguments and affirmed White's conviction.[11]

2. Palmer's Misconduct

In 2015, following an investigation and indictment, Mr. Palmer pleaded guilty to Second-Degree Theft, Tampering with Physical Evidence, Official Misconduct, and Misconduct involving a Controlled Substance for behavior involving his work with controlled substances at the Alaska Crime Lab from 2007 through 2011.[12] As part of his plea agreement, Mr. Palmer admitted to consuming a number of substances,[13] including Oxycodone, Fentanyl, opiates, methamphetamine, heroin, Xanax, MDMA, and ketamine during his time with the Alaska Crime Lab.[14] In addition to admitting he consumed these substances, Mr. Palmer also admitted that in several instances, he manipulated or adulterated lab reference samples to conceal his thefts.[15] Based on Mr. Palmer's wrongdoing and conviction, White filed a Motion to Vacate his Conviction and Sentence under 28 U.S.C. § 2255.[16]

White then filed a First Amended Motion to Vacate or Set Aside Conviction, and the Government moved to dismiss the Motion.[17] White moved for leave to conduct discovery into the circumstances surrounding Mr. Palmer's conviction, which potentially impacted his case in 2007 and 2008.[18] The

---

[9] *See* Dkt. 191 (Ninth Circuit ("9CCA") Judgment).
[10] *See id.* at 1–2; *see also* Dkt. 263 at 8–9.
[11] Dkts. 191 at 1–2; 192 (9CCA Mandate).
[12] *See State of Alaska v. Stephen Palmer*, Alaska Superior Court Case No. 3AN-14-02141CR (filed on Mar. 7, 2014); Dkt. 263-2 at 2 (Palmer Indictment) (also found at Dkt. 279-2); Dkt. 263-2 at 5 (Palmer Information); Dkt. 263-2 at 8 (Palmer Notice of Plea Agreement) (also found at 272-1)
[13] Dkt. 263-2 at 8–9.
[14] *State of Alaska v. Stephen Palmer*, Alaska Superior Court Case No. 3AN-14-02141CR; Dkt. 279-1 (Palmer Criminal Complaint). The Criminal Complaint against Mr. Palmer also included allegations that Mr. Palmer consumed heroin and methamphetamine on a daily basis between 2005–2011. Dkt. 279-1 at 10; *see also* Dkt. 272-7 (News Articles).
[15] *See* Dkt. 263-2 at 7–9.
[16] Dkt. 262. White previously filed an unsuccessful motion for relief under 28 U.S.C. § 2255. Dkts. 219 (First Motion); 254 (Order Denying First Motion). Consequently, White sought and was granted leave from the United States Court of Appeals for the Ninth Circuit to file the present, successive Motion. Dkts. 272-1 (Application); 272 (9CCA Order Granting Application for Successive § 2255 Motion).
[17] Dkts. 277; 279 (Motion to Dismiss).
[18] Dkt. 279 at 18–19.

Court agreed and ordered discovery.[19] After both Parties reviewed written discovery, they filed supplemental briefs.[20]

### B. Section 2255 Motion

In his successive Motion, White argues the prosecution team failed to disclose exculpatory evidence in violation of *Brady v. Maryland*.[21] Specifically, White argues that the revelations about Mr. Palmer's misconduct in 2007 and 2008 constitute exculpatory and impeachment evidence, and that he can prove with reasonable probability that disclosure would have altered the outcome of his trial.[22] Consequently, the Government violated his rights to due process, a fair trial, and to confront and cross examine witnesses.[23] White did not explicitly request an evidentiary hearing, but reserved his right to do so at a later date.[24]

The Government filed an Opposition to White's Motion, arguing that: (1) his Motion is time barred under the one-year statute of limitations period; (2) the Government complied with all of its discovery obligations, and Mr. Palmer's misconduct was unknown to the Government at the time of White's trial in December 2008; (3) even if the Government had been aware of any issues relating to Mr. Palmer and had been able to provide discovery, this information was not material to the outcome of White's trial; (4) newly-discovered evidence is not grounds for relief under § 2255; and (5) White has failed to show actual prejudice from the claimed error or to present a colorable claim of innocence.[25] Additionally, the Government argues that White has not provided any actual evidence of wrongdoing by Mr. Palmer that directly affected the outcome of his trial; therefore, White has failed to justify an evidentiary hearing or entitlement to the relief he seeks.[26]

### C. Final Report and Recommendation

On July 15, 2021, the Magistrate Judge issued the Final R&R recommending denial of White successive Motion under 28 U.S.C. § 2255.[27] The Magistrate Judge reasons that although evidence of Mr. Palmer's illegal drug use would have been favorable impeachment evidence to White, the Government did not willfully or inadvertently suppress evidence, and evidence of Mr. Palmer's

---

[19] Dkts. 306 at 21–22 ; 307 (Order Adopting R&R); 308 (Minute Entry re Discovery Conference).
[20] Dkts. 329; 331; 336; 337.
[21] Dkts. 262 at 5; 263 at 27–31; *Brady v. Maryland*, 373 U.S. 83 (1963).
[22] Dkt. 277 at 4.
[23] *Id.* at 4, 12–14; Dkt. 263 at 15–31.
[24] *See* Dkt. 277 at 18–19.
[25] Dkt. 279 at 5–16.
[26] *Id.* at 17–18.
[27] Dkt. 340 at 21.

wrongdoings was not material to the outcome of White's case.[28] Accordingly, the Magistrate Judge concludes no *Brady* violation occurred in White's case.[29] The Magistrate Judge notes:

> Palmer's testimony was key to the Government's case because he laid the foundation for the substances mentioned in the three counts for which Defendant was found guilty. "Palmer personally examined and tested four of the samples seized in White's case, which related to [C]ounts 1, 2, and 3 of the indictment." Palmer's testimony provided evidence that the substances contained Cocaine Base, and no other independent testing was performed.
>
> Palmer played a central role in the Government's proof. Palmer testified he analyzed the substances and prepared laboratory reports. These reports are drafted in a standard form and contained Palmer's opinion on the net weight, description, tests (performed), notes (in a narrative), and results (of the test). There were three reports analyzing the substances, each supporting the allegations in Counts 1–3. Palmer completed these reports on December 13, 2007, October 25, 2007, and June 28, 2007.[30]

Additionally, the Magistrate Judge notes that during the time period Mr. Palmer was "stealing narcotics from and tampering with evidence retained by the Alaska Crime Lab, Palmer was engaged in analyzing narcotics, preparing reports, and testifying as an Alaska state employee and expert on behalf of the Government" in White's criminal case.[31]

In evaluating White's *Brady* claim, the Magistrate Judge concludes Mr. Palmer's admission that he used drugs during the period when he testified at White's trial and his illegal conduct is relevant impeachment evidence favorable to White.[32] However, despite acknowledging Mr. Palmer's egregious misconduct, the Magistrate Judge concludes that there is no evidence that the prosecutors in this case abandoned their ethical responsibility to disclose favorable evidence to the defense.[33] The Magistrate Judge notes that "to hold Palmer's criminal activity as *Brady* material would impose a duty on the prosecution in every case to constantly investigate all law enforcement who work on a case and every witness to the point of absurdity."[34]

Further, the Magistrate Judge concludes that no evidence came to light during the recent discovery phase indicating that Mr. Palmer stole, altered, or acted inappropriately with the evidence seized and used in White's case or that Mr. Palmer "consumed or altered any samples" of cocaine, cocaine Base, or crack cocaine"—the substances found in White's case.[35] Even if the samples in White's case were adulterated, lab testing would not have lead "to a false positive" for a detectable amount

---

[28] *Id.* at 11–20.
[29] *Id.* at 20.
[30] Dkt. 340 at 4–5.
[31] *Id.* at 8.
[32] *Id.* 12–15.
[33] *Id.* at 16–17.
[34] *Id.* at 16.
[35] *Id.* at 8.

of cocaine base or crack cocaine.[36] Thus, the Magistrate Judge is not convinced by the record before the Court that the drug evidence from White's case was adulterated by Mr. Palmer.[37]

Finally, the Magistrate Judge concludes that the Government's case against White "included substantial inculpatory evidence from various sources."[38] The Government presented witnesses as well as audio and video evidence implicating White in the charges against him, which the Magistrate Judge concludes "significantly outweighed the impeachment evidence against Palmer."[39] Thus, the Magistrate Judge recommends that White's successive Motion be denied.[40]

### D. Objections

White filed Objections, specifically objecting to: (1) the Magistrate Judge's conclusion that because the State of Alaska, and by extension the Government, were purportedly ignorant of Mr. Palmer's misconduct, the misconduct was not "suppressed" for purposes of *Brady*, and (2) the Magistrate Judge's conclusion that Mr. Palmer's conduct is not material to the outcome of White's trial.[41] The Court addresses each objection in turn.

After reviewing the Magistrate Judge's Final R&R, the Court reviewed the relevant portions of the record developed through the entry of judgment by this Court and the affirmance of that judgment by the Ninth Circuit Court of Appeals, including the relevant portions of the transcript of White's trial.

1. Suppression under *Brady*

First, the Court agrees with the Magistrate Judge's conclusion that the Government did not, under *Brady*, "suppress" evidence of Mr. Palmer's misconduct.

In *Brady*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution."[42] There are three components of a *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the Government, either willfully or inadvertently; and (3) prejudice must have ensued.[43]

---

[36] *Id.* at 13.
[37] *Id.* at 8–9, 12–15 (citing to Dkt. 320-1 (Foster Aff.)).
[38] *Id.* at 17–20.
[39] Dkt. 340 at 19.
[40] *Id.* at 21.
[41] Dkt. 341 at 2–7.
[42] 373 U.S. at 87.
[43] *Stickler v. Greene*, 527 U.S. 263, 281–82 (1999); *Youngblood v. West Virginia*, 547 U.S. 867, 869 (2006) (per curiam); *United States v. Bagley*, 473 U.S. 667, 676 (1985); *see also Giglio v. United States*, 405 U.S. 150, 153–154 (1972) (clarifying that the rule stated in *Brady* applies to evidence undermining witness credibility).

"For claims under *Brady*, the prosecutor's personal knowledge does not define the limits of constitutional liability."[44] Instead, the prosecutor has an obligation "to learn of any favorable evidence known to the others acting on the government's behalf in [the] case, including the police."[45] Further, if a prosecutor suspects a witness has committed perjury, "the prosecutor must at least investigate"—a responsibility "consistent with his duty to correct what he knows or suspects to be false and elicit the truth."[46] The Government's *Brady* obligation extends to the files of agencies that were responsible for the primary investigation in a prosecution.[47] Once the prosecutor acquires favorable information, even if she "inadvertently" fails to communicate it to the defendant, evidence has been suppressed.[48] Evidence is "suppressed" where it is known to the State and not disclosed to the defendant.[49]

Clearly evidence of Mr. Palmer's misdeeds was favorable to White for *Brady* purposes.[50] However, the Government has no obligation to produce information that it does not possess or of which it is unaware.[51] The Magistrate Judge convincingly distinguishes case law, including *Wearry v. Cain*, 577 U.S. 385, 398 (2016) (per curiam), *Hooper v. Shinn*, 985 F.2d 594, 619–620 (9th Cir. 2021), *Youngblood v. West Virginia*, 547 U.S. 867, 869 (2006), and *United States v. Bruce*, 984 F.3d 884, 896–97 (9th Cir. 2021), in which law enforcement or other government actors had contemporaneous (or temporarily close) knowledge of exculpatory or impeachment evidence and failed to share it with defense counsel.[52]

Here, there is no evidence suggesting that any state or federal government agent had knowledge or evidence of Mr. Palmer's misconduct—save Mr. Palmer himself—of could have learned of

---

[44] *Browning v. Baker*, 875 F.3d 444, 460 (9th Cir. 2017) (citing *Youngblood*, 547 U.S. at 869–70).
[45] *Comstock v. Humphries*, 786 F.3d 701, 709 (9th Cir. 2015) (citing *Strickler*, 527 U.S. at 281); *Kyles v. Whitley*, 514 U.S. 419, 437–438 (1995); *Browning*, 875 F.3d at 460 ("*Brady* imposes a duty on prosecutors to learn of material exculpatory and impeachment evidence in the possession of state agents, such as police officers.").
[46] *United States v. Price*, 566 F.3d 900, 910 n.11 (9th Cir. 2009) (internal quotation marks, alterations, and citation omitted).
[47] *United States v. Jensen*, No. 3:09–cr–108–JWS–JDR, 2011 WL 1302908, at *13 (D. Alaska Apr. 5, 2011) (citing, *inter alia*, *Strickler v. Greene*, 527 U.S. 263 (1999).
[48] *Strickler*, 527 U.S. at 282.
[49] *Comstock*, 786 F.3d at 709 (citing *Strickler*, 527 U.S. at 282).
[50] *Milke v. Ryan*, 711 F.3d 998, 1012 (9th Cir. 2013) ("Any evidence that would tend to call the government's case into doubt is favorable for *Brady* purposes.").
[51] *Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995); *United States v. Chen*, 754 F.2d 817, 824 (9th Cir. 1985) ("While the prosecution must disclose any information within the possession or control of law enforcement personnel, it has no duty to volunteer information that it does not possess or of which it is unaware[.]" (citation omitted)); *see also Benn v. Lambert*, 283 F.3d 1040, 1062 (9th Cir. 2002) ("[W]e expect prosecutors and investigators to take all *reasonable* measures to safeguard the system against treachery.") (emphasis added) (internal quotation marks and citation omitted).
[52] *See* Dkt. 340 at 15–16.

Mr. Palmer's misconduct through reasonable diligence. White argues that the Government "constructive[ly] possess[ed]" evidence of Mr. Palmer's misconduct at the time of trial but points to no evidence indicating how the Government could have known or uncovered that Mr. Palmer was abusing drugs and tampering with evidence when his own employer, a separate sovereign, did not.[53] The evidence was simply not available until the 2012 investigation prompted by Mr. Palmer's wife.[54] The Government cannot violate an obligation (under *Brady*) that it did not have.[55]

White also analogizes his case to *State v. Roche*, in which the Washington Court of Appeals vacated a defendant's conviction for possession of methamphetamine with intent to deliver and remanded for a new trial following revelations that the state crime lab chemist was self-medicating with heroine and had adulterated or otherwise tainted samples in criminal cases.[56] During trial, the crime lab chemist testified, identifying certain government exhibits as drugs found at defendant's residence and describing his testing and cataloging of the drugs.[57] Following trial, colleagues of the chemist discovered he had been routinely stealing and abusing heroin from the state crime lab.[58] As a result, defendant moved for a new trial.[59] The court concluded that "a rational trier of fact could reasonably doubt [the chemist's] credibility regarding his testing of any alleged controlled substances, not just heroin, and regarding his preservation of the chain of custody during the relevant time period."[60]

Despite substantial factual similarities between *Roche* and White's case, *Roche* is nevertheless distinguishable. *Roche* involved a state court prosecution with state employees in which colleagues suspected the state crime lab chemist of wrongdoing.[61] Further, the Washington Court of Appeals did not reach a decision regarding the alleged *Brady* violation, reversing on the grounds that the

---

[53] Dkt. 263 at 29.
[54] *See* Dkt. 340 at 9 (noting that in January 2012, Mr. Palmer's wife called 911 and requested a welfare check; an investigation in Mr. Palmer's behavior while employed at the Alaska Crime Lab followed).
[55] *See United States v. Cano*, 934 F.3d 1001, 1024–26 (9th Cir. 2019) (holding that the government satisfied its obligations under *Brady* where "the prosecution had [no] knowledge or possession of" potentially exculpatory evidence in a separate federal agency's possession and where defendant only "alleged [the] prosecutor had knowledge that certain *facts* might exist"); *see also Robinson v. United States*, 50 A.3d 508, 520 (D.C.C. 2012) ("We nevertheless conclude that the government did not suppress the evidence for *Brady* purposes because there is no basis in the record for concluding that the government knew about [witness's] recent PCP use prior to trial. . . . The government cannot have disclosed to the defense what it did not know itself") (citing *Sanchez*, 50 F.3d at 1453); *Bellinger v. United States*, 127 A.3d 505, 521 (D.C.C. 2015).
[56] Dkt. 341 at 7; *State v. Roche*, 59 P.3d 682, 689 (Wash. Ct. App. 2002), *as amended* (Wash. Ct. App. Dec. 4, 2002).
[57] *Id.* at 688.
[58] *Id.* at 688–90
[59] *Id.*
[60] *Id.* at 691.
[61] *See id.* at 686–87, 691.

7

chemist broke the state's chain of custody and undermined the state's ability to prove the substance recovered from defendant's residence was methamphetamine.[62] Although ignorance or willful blindness to such malfeasance should not be rewarded, it is clear that that in this case federal prosecutors had no indication of Mr. Palmer's misconduct or an ability to verify his credibility as a state employee when his own employer was satisfied with his performance and did not suspect his misdeeds.[63]

The Court agrees with the Magistrate Judge's conclusion that the Government did not "suppress" evidence in White's case in violation of *Brady*.

2. Materiality and Prejudice under *Brady*

Second, the District Court agrees with the Magistrate Judge's ultimate conclusion that Mr. Palmer's misconduct is not material to the outcome of White's trial. However, the post-trial discovery of Mr. Palmer's misdeeds does more than "merely add" impeachment evidence.[64] Instead, because Mr. Palmer's was using and stealing drugs from the Alaska Crime Lab, his misconduct undermines the integrity of the physical evidence use to convict White. Nevertheless, there is ample evidence in the record to corroborate Mr. Palmer's guilt separately and independently of Mr. Palmer's testimony; consequently, the Court concludes the misconduct did not prejudice White.

As White correctly notes, courts do not distinguish between impeachment evidence and other types of exculpatory evidence for purposes of establishing a *Brady* violation.[65] And as the Court and Magistrate Judge previously noted, evidence regarding Mr. Palmer's misdeeds was clearly favorable to White.[66] The critical question then is whether the failure to disclose the information about Mr. Palmer's misdeeds was material.[67]

---

[62] *Id.* at 690, 695.
[63] *See Benn*, 283 F.3d at 106 (noting that the Ninth Circuit has held that the federal prosecutors "had no control over" materials held exclusively by state agencies and that failure to provide such materials does not run afoul of *Brady* ); *cf. United States v. Cano*, 934 F.3d 1001, 1023 (9th Cir. 2019) ("Documents held by another executive branch agency are deemed to be "in the possession of the government" if the prosecutor has 'knowledge of and access to' the documents.").
[64] *See* Dkt. 340 at 19–20.
[65] *United States v. Bundy*, 968 F.3d 1019, 1031 (9th Cir. 2020) ("'*Brady* evidence' can be favorable 'either because it is exculpatory or impeaching.'") (quoting *Milke v. Ryan*, 711 F.3d 998, 1012 (9th Cir. 2013)); *Doe*, 705 F.3d at 1125 ("Material evidence includes exculpatory evidence and impeachment evidence.").
[66] *See Comstock v. Humphries*, 786 F.3d 701, 708 (9th Cir. 2015) ("However, whether evidence is favorable is a question of substance, not degree, and evidence that has any affirmative, evidentiary support for the defendant's case or any impeachment value is, by definition, favorable.") (citing *Strickler*, 527 U.S. at 281–82).
[67] *See United States v. Johnson*, 557 F. Supp. 2d 1066, 1072 (N.D. Cal. 2008), *aff'd* 360 F. App'x 840 (9th Cir. Dec. 29, 2009); Dkt. 340 at 19.

Failure to disclose information only constitutes a *Brady* violation if the requested information is "material" to the defense.[68] To establish materiality, a defendant need not demonstrate "that disclosure of the suppressed evidence would have resulted ultimately in [his] acquittal."[69] Rather, a defendant need only establish "a 'reasonable probability' of a different result" had the evidence been properly disclosed.[70] A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.[71] The obligation extends to favorable evidence that was not requested by the defense.[72] A Court must cumulatively evaluate the materially of wrongfully withheld evidence.[73]

During the final pre-trial conference in White's case, defense counsel took issue "with the discrepancies in weights of [drug] evidence, from the time of the initial seizures to when the evidence was analyzed at the crime lab."[74] The Court noted that such discrepancies went "to the witness credibility" and could be addressed by questioning the Government witness.[75]

During trial, Mr. Palmer testified as the Government's expert witness regarding the chemical composition of the substances White was charged with possessing and distributing. Mr. Palmer testified that his "primary area of responsibility is to analyze controlled substances" and noted that he had been qualified as an expert to testify in the area of controlled substances analysis 98 times in state and federal courts.[76] Mr. Palmer described the chain of custody for drug samples brought to the state lab and the testing process.[77] Mr. Palmer authenticated the Government's evidence, testifying that he personally examined and tested about the weight and contents of Government Exhibit 4–7 and described how he had sealed, tested, and resealed the samples, which related to Counts 1–3 of the Indictment.[78] He also prepared laboratory reports on December 13, 2007, October 25, 2007, and June 28, 2007, analyzing the substances supporting the allegations in Counts 1–3[79]—the Counts on which White was ultimately convicted.

Despite the Government's considerable reliance on Mr. Palmer's lab work and testimony and the importance of his credibility to the jury, as the Magistrate Judge notes, the case against White "included substantial inculpatory evidence from various sources."[80] This evidence includes as audio and video recordings from the controlled buys from White, testimony from the confidential

---

[68] *United States v. Shaffer,* 789 F.2d 682, 687–88 (9th Cir. 1986).
[69] *Kyles*, 514 U.S. at 434; *Armando v. Gonzalez*, 758 F.3d 1119, 1139 (9th Cir. 2014) ("Evidence can be sufficient to sustain a verdict, and still *Brady* can be violated.").
[70] *Kyles*, 514 U.S. at 434; *Turner v. United States*, 137 S. Ct. 1885, 1893 (2017); *United States v. Bagley*, 473 U.S. 667, 678 (1985).
[71] *United States v. Doe*, 705 F.3d 1134, 1152 (9th Cir. 2013); *Bagley*, 473 U.S. at 682.
[72] *See Kyles*, 514 U.S. at 432–34; *Carriger v. Stewart*, 132 F.3d 463, 479 (9th Cir. 1997) (en banc).
[73] *See Kyles*, 514 U.S. at 441; *Wearry*, 577 U.S. at 394.
[74] *Id.* at 6.
[75] *See id.* at 7.
[76] Dkt. 183 at 127–29.
[77] *Id.* at 131–32.
[78] *Id.* at 132–148; Dkt. 277 at 2, 7 (citing Dkt. 129 (Ex. List)).
[79] *See* Dkt. 263-2 at 15–28 (Crime Lab Reports).
[80] Dkt. 340 at 17.

witness ("CW") about buying what he believed to be crack cocaine from White, testimony from FBI special agents acting as the CW's handler, and testimony from agents who applied for and executed the warrant to search White's apartment.[81] Additionally, Forensic Chemist Brandi Barnett testified on behalf of the Government during White's trial regarding the samples in White's case.[82] Ms. Barnett testified as to tests conducted and the substance and weight of Government Exhibits 1–3—also drugs—and confirmed that the samples introduced by the Government into evidence contained cocaine.[83] Thus, the District Court agrees that the Government presented substantial evidence implicating White in charges against him above and beyond Mr. Palmer's reports and testimony. Therefore, White has failed to demonstrate a reasonable probability that the unavailability of information surrounding Mr. Palmer's misconduct undermined confidence in the trial outcome.

The Magistrate Judge also concludes that following the reopening of discovery, there is no direct evidence showing that Mr. Palmer altered the evidence in White's case or tampered with the reference samples used in White's case.[84] The Magistrate Judge points out that the post-trial lab testing and expert opinion indicate that even if Mr. Palmer had manipulated the reference samples in White's case, such adulteration would not have resulted in a "false positive for cocaine[.]"[85] Further, although Mr. Palmer confessed to stealing and consuming drug evidence in his possession while employed at the Alaska Crime Lab and admitted adulterating reference samples in several cases to conceal his thefts, he did not admit to tampering with cocaine or cocaine base specifically.[86] Yet, these admissions cast a cloud of suspicion over not only Mr. Palmer's professional credibility, but also over the legitimacy of the physical evidence used to convict White. The Court cannot conclude, as the Magistrate Judge does, that there are insufficient indications of physical evidence manipulation on the part of Mr. Palmer. Mr. Palmer's conduct is a deep betrayal that shakes confidence in the integrity of the criminal justice system.[87] Nevertheless, for the foregoing reasons, the Court concludes Mr. Palmer's misconduct does not establish a violation under *Brady* warranting reversal.

---

[81] *Id.* at 17–18. The Court will not repeat all of the evidence discussed by the Magistrate Judge.
[82] *See id.* at 18; Dkt. 184 at 39, 42–59.
[83] Dkts. 184 at 45–51; 340 at 19.
[84] *See* Dkt. 340 at 20.
[85] Dkt. 340 at 13 (citing Dkt. 320-1, which explains that "the testing procedure [gas chromatography/mass spectrometry] . . . would not lead to a false positive for cocaine even if the reference material used for mass spectral comparison was adulterated or completely substituted").
[86] *See* Dkts. 236-2 at 7–9; 340 at 8.
[87] *See* 34 No. 4 Crim. Law News NL 65, *Drug Defendants Were Entitled to Relief After Chemist at State Laboratory Committed Misconduct Affecting Thousands of Cases* (Feb. 13, 2017); *Bridgeman v. Dist. Attorney for Suffolk Dist.*, 67 N.E. 3d 673, 686 (Mass. 2017) ("'[W]e cannot expect defendants to bear the burden of a systemic lapse,' but we declined to implement a global remedy 'at this time' because we would not 'allow the misconduct of one person to dictate an abrupt retreat from the fundamentals of our criminal justice system[.] . . .[However] where there is egregious misconduct attributable to the government in the investigation or prosecution of a criminal case, the government bears the burden of taking reasonable steps to remedy that misconduct." (citing *Strickler v. Greene*, 527 U.S. 263, 281 (1999)).

*E. Conclusion*

The Court concludes White's objections do not merit rejection of the R&R. Accordingly, the Court **ADOPTS and ACCEPTS** the R&R at Docket 340. Consequently, the Motion at Docket 262 is **DENIED**.

Entered at the direction of the Honorable Timothy M. Burgess, United States District Judge.

DATE: September 29, 2021.